UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CHER LYNN JUSTICE, | |
| Plaintiff, | Case No. 21-cv-10503 |
| | Honorable Gershwin A. Drain |
| v. | Magistrate Judge Elizabeth A. Stafford |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 14, 15)

### I.    Introduction

Plaintiff Cher Lynn Justice appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied her application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act.  Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).  ECF No. 14; ECF No. 15.  After reviewing the record, the Court **RECOMMENDS** that:

- Justice's motion (ECF No. 14) be **DENIED**;

- the Commissioner's motion (ECF No. 15) be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## II.   Background

### A.  Justice's Background and Disability Application

Born in March 1972, Justice was 44 years old when she applied for DIB and SSI in May 2016, with an alleged disability onset date of January 2011.  ECF No. 12-1, PageID.54, 69.  She had past relevant work as a CNC operator, machine operator, and inspector.  *Id.* at PageID.68-69.  Justice claimed disability from post-traumatic stress disorder (PTSD), severe anxiety, depression, isolation, chronic pain, and fibromyalgia.  *Id.* at PageID.164.

After a hearing, during which Justice and a vocational expert (VE) testified, the ALJ found Justice not disabled.  *Id.* at PageID.54, 70.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  *Id.* at PageID.43-45.  Justice timely filed for judicial review.  ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

2

can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health &*

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c); 416.920(c).

*Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Justice was not disabled.  At the first step, he found that Justice had not engaged in substantial gainful activity since the alleged onset date of January 11, 2011.  ECF No. 12-1, PageID.57.  At the second step, he found that Justice had the severe impairments of affective disorder, anxiety disorder, PTSD, uveitis, cataracts, degenerative disc disease of the cervical and lumbar spine, and fibromyalgia/polyarthralgia.  *Id.* at PageID.57-58.  Next, the ALJ concluded that none of Justice's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.* at PageID.58-60.

Between the third and fourth steps, the ALJ found that Justice had the RFC to perform light work,[2] except

> [Justice] can never climb ladders, ropes, or scaffolds; only frequently climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; with only frequent exposure to non-weather related extremes of cold; in occupations that require only frequent near acuity; in simple, routine, repetitive tasks; with no public interaction; and only occasional supervisor and co-worker interaction.

---

[2] Light work involves occasionally lifting or carrying 20 pounds at a time, frequently lifting or carrying ten pounds at a time, and standing or walking for six hours out of an eight-hour workday.  20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Regulation 83-10.

*Id.* at PageID.61.  At step four, the ALJ found that Justice cannot perform

any past relevant work as a CNC operator, machine operator, or inspector.

*Id.* at PageID.68-69.  At the final step, after considering Justice's age,

education, work experience, RFC, and the testimony of the VE, the ALJ

determined that there were jobs in significant numbers that Justice could

perform, including positions as a routing clerk, marker, and collator.  *Id.* at

PageID.69-70.

## III.   Analysis

## A.

Under § 405(g), this Court's review is limited to determining whether

the Commissioner's decision is supported by substantial evidence and

conformed with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*,

741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an
> existing administrative record and asks whether it contains
> sufficient evidence to support the agency's factual
> determinations.  And whatever the meaning of substantial in
> other contexts, the threshold for such evidentiary sufficiency is
> not high.  Substantial evidence, this Court has said, is more
> than a mere scintilla.  It means—and means only—such
> relevant evidence as a reasonable mind might accept as
> adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks

omitted).  Only the evidence in the record below may be considered when

determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Justice argues that the ALJ erroneously applied res judicata and failed to give controlling weight to treating sources' opinions. She asserts more arguments in her pro se reply.[3] The Court disagrees with Justice's arguments and recommends that the ALJ's decision be affirmed.

**B.**

Justice first argues that the ALJ erroneously determined that res judicata bound him to adopt findings from a 2015 decision rather than giving Justice's current application a fresh review. ECF No. 14, PageID.1801-1804. The Court disagrees.

Until 2018, the primary authority on res judicata was *Drummond v. Comm'r of Soc. Sec.*, which held, "When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d 837, 842 (6th Cir. 1997). In response to

---

[3] An attorney filed Justice's motion for summary judgment, but he later withdrew and said that another attorney would be taking his place. ECF No. 16; ECF No. 17. But the other attorney never appeared. The Court thus gave Justice a deadline to file a reply regardless of whether she proceeded pro se or found another attorney. ECF No. 18. She filed a timely reply. ECF No. 19.

*Drummond*, the Commissioner implemented Acquiescence Ruling 98-4(6), requiring that ALJs deciding a subsequent disability claim adopt the findings from the prior decision unless there is new and material evidence or a change in the law.  But the Sixth Circuit later clarified that, despite language from *Drummond* suggesting otherwise, res judicata does not prevent an ALJ from "giving a fresh look" to a new application about a new period.  *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931 (6th Cir. 2018).  While an ALJ may "take the view that, absent new and additional evidence, the first [ALJ's] findings are a legitimate, albeit not binding, consideration," the second application is entitled to a full review.  *Id.* at 933.

Although Justice's current application involves a new unadjudicated period, the ALJ erroneously applied *Drummond*.  ECF No. 12-1, PageID.56.  But that alone does not merit remand.  Rather, the question for the Court is whether the ALJ, "despite purporting to follow *Drummond*, gave the evidence a fresh look as required by *Earley*; if so, then the ALJ's decision satisfies *Earley*; if not, then remand is appropriate."  *Mitchell v. Comm'r of Soc. Sec.*, No. 20-13414, 2022 WL 265869, at *2 (E.D. Mich. Jan. 28, 2022) (alterations, citations, and internal quotation marks omitted).

Here, the ALJ gave Justice's current application a fresh look.  Along with the severe impairments from the 2015 decision, he found new

7

impairments of PTSD, cataracts, and degenerative disc disease.  ECF No.

12-1, PageID.57, 135.  And he found that Justice's mental impairments

caused moderate limitation in social functioning, as compared with the mild

limitation found in 2015.  *Id.* at PageID.59, 136.  The ALJ declined to fully

adopt the prior RFC, finding that new and material evidence supported the

added restrictions of no interaction with the public and only occasional

interaction with supervisors and coworkers.  *Id.* at PageID.61, 137.

The ALJ discussed Justice's new medical records and her records

from the previously adjudicated period.  *Id.* at PageID.62-68.  This type of

analysis shows the ALJ gave Justice's current application a fresh look.

*See Mitchell*, 2022 WL 265869, at *3-4.

### C.

Justice argues that the ALJ failed to give controlling weight to Syed

Quadri, M.D.'s, and Robin Hammer, LPC's, opinions about the limiting

effects of her mental impairments.  ECF No. 14, PageID.1798-1799, 1804-

1809.  She says the ALJ's rejection of these opinions was not adequately

explained or supported.  *Id.* at PageID.1805.  The Court finds no error.

The "treating physician rule" requires an ALJ to give controlling

weight to a treating physician's opinions about the nature and severity of a

claimant's condition when those opinions are well-supported by medically

acceptable clinical and diagnostic evidence, and are not inconsistent with other substantial evidence.[4]  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242-43 (6th Cir. 2007); *Gentry*, 741 F.3d at 723, 727-29.  "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion.  *Gentry*, 741 F.3d at 723.

An ALJ who gives less than controlling weight to a treating physician's opinion must provide "good reasons" for doing so to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p).  This procedural safeguard permits "meaningful appellate review" and ensures that claimants "understand the disposition of their cases."  *Id.* at 242-43 (internal quotation marks omitted).

---

[4] Under new administrative rules, ALJs will weigh both treating and non-treating medical evaluations based on how well they are supported by the rest of the record.  20 C.F.R. §§ 404.1520c; 416.920c; *Wolfe v. Comm'r of Soc. Sec.*, No. 16-13620, 2017 WL 6627044, at *7 (E.D. Mich. Nov. 26, 2017), *adopted*, 2017 WL 6621538 (E.D. Mich. Dec. 28, 2017).  The new rules apply only to claims filed on or after March 27, 2017.  20 C.F.R. §§ 404.1520c, 416.920c.  Because Justice filed her claim in 2016, the treating physician rule still applies.

In April 2018, Dr. Quadri, Justice's psychiatrist since January 2016, completed a mental RFC assessment.  ECF No. 12-1, PageID.579-582. He diagnosed Justice with major depressive disorder, generalized anxiety disorder, and PTSD, with a global assessment of functioning (GAF) score of 45, reflecting serious symptoms.  *Id.* at PageID.579.  He found that Justice had marked limitations in understanding, memory, and sustained concentration and persistence, and moderate to extreme limitations in social interaction and adaptation.  *Id.* at PageID.580-581.  Dr. Quadri also believed that Justice would be off task 20% of the day and would miss 25 days of work per month.[5]  *Id.* at PageID.582.

Hammer, Justice's therapist since September 2015, opined in April 2019 that Justice would be unable to meet competitive standards in most domains of mental functioning, including maintaining attention for two hours, working in close proximity to others, and performing at a consistent pace.  ECF No. 12-2, PageID.1387.  She had no useful ability to function by responding appropriately to changes in a routine work setting.  *Id.* Hammer believed that Justice would miss more than four days of work per month.  *Id.* at PageID.1388.

---

[5] The VE testified that being off task more than 15% of the day or missing more than one day of work per month would preclude work.  ECF No. 12-1, PageID.93.

In February 2020, Hammer provided another assessment noting Justice's deteriorating physical appearance and mental condition.  *Id.* at PageID.1793.  Hammer reported that Justice had "increased psychotic features, including paranoid delusions," (e.g., that a neighbor was watching her and had damaged her car), and described Justice's "hypervigilant" behavior.  *Id.*  Among other limitations, Justice had social cognition deficits, severe anxiety, sleep impairments, cognitive deficits impacting processing and functioning, and dysphoric mood.  *Id.*  Hammer diagnosed major depressive disorder with psychotic features, PTSD, and schizoaffective disorder, with a GAF score of 34, indicating some impairment in reality testing.  *Id.* at PageID.1794.

The ALJ assigned Quadri's and Hammer's opinions little weight despite the length of the treatment relationships.  ECF No. 12-1, PageID.66-67.  He reasoned that neither opinion was consistent with the objective medical evidence, including the providers' own treatment notes, and that the opinions stemmed from Justice's subjective complaints.  *Id.* The ALJ referenced medical records showing that while Justice's moods were abnormal, she had normal memory, judgment, orientation, and cognition, with average intelligence.  *Id.*  And he reasoned that Justice received conservative treatment, without crisis intervention, psychiatric

hospitalization, or other intensive mental health treatment.  *Id.* at PageID.67.  Finally, the ALJ noted that Justice's reported daily activities were consistent with the ability to perform simple, routine, and repetitive tasks.  *Id.*  Substantial evidence supports the ALJ's reasoning.

Inconsistent with his April 2018 opinion, the only abnormal findings from Dr. Quadri's mental status examinations were with Justice's mood.  *Id.* at PageID.591, 593, 595, 598, 600, 602, 605, 607, 609, 613, 616; ECF No. 12-2, PageID.1774, 1778, 1780, 1787.  Dr. Quadri often noted that Justice's mood was anxious, depressed, irritable, or panicked.  ECF No. 12-1, PageID.593, 598, 600, 602, 607, 613, 616.  He observed no mood disturbance just as often.  *Id.* at PageID.591, 595, 605, 609; ECF No. 12-2, PageID.1774, 1778, 1780, 1787.

In September 2016, Dr. Quadri observed that Justice was well groomed, friendly, and cooperative.  ECF No. 12-1, PageID.616.  She was oriented to situation, time, place, and person, and her affect was consistent with her anxious, depressed mood.  *Id.*  Her speech, perception, eye contact, memory, judgment, thought processes and content, attention, and concentration were normal.  *Id.*  Dr. Quadri diagnosed Justice with moderate recurrent major depression, generalized anxiety disorder, and PTSD, and prescribed medication.  *Id.*  His mental status findings remained

12

the same through December 2019.  Justice argues that Dr. Quadri simply did not update these findings.  ECF No. 19, PageID.1853.  The Court does not find that argument credible because he did document variations in Justice's mood.

Dr. Quadri also decreased Justice's medication dosages over time. ECF No. 15, PageID.1840.  In January 2017, Justice was taking 60 mg of Cymbalta twice a day, 200 mg of trazodone once a day, and 1 mg of Xanax twice a day as needed.  ECF No. 12-1, PageID.614.  But by December 2019, she was taking 60 mg of Cymbalta once a day, 100 to 200 mg of trazadone once a day, and 0.5 mg of Xanax twice a day as needed.  ECF No. 12-2, PageID.1778.  Justice contends that Dr. Quadri reduced her Xanax in response to the opioid crisis.  ECF No. 19, PageID.1854.  There is no corroborating note in the medical records.  And Justice's argument ignores the decreased doses of antidepressants Cymbalta and trazadone.

Hammer's treatment notes also conflict with her April 2019 and February 2020 opinions.  In November 2017, Hammer observed that Justice's physical appearance, posture, and speech were normal.  *Id.* at PageID.492.  Her affect and mood were severely anxious and depressed, but she had normal thought content and no hallucinations.  *Id.*  Her recent memory was impaired, but her immediate recall and remote memory were

13

normal.  *Id.*  Overall, Hammer diagnosed major depressive disorder, with a GAF score of 60, suggesting moderate impairments.  *Id.* at PageID.488. Hammer's treatment notes through October 2019 say that Justice was oriented to person, place, and time and had an appropriate affect, normal thought content, and dysthymic and anxious mood.  *Id.* at PageID.483, 496, 500, 504, 506, 520, 525, 532, 539; ECF No. 12-2, PageID.1715-1720. Hammer's handwritten notes during those visits did not describe her own observations but summarized Justice's subjective complaints, as the ALJ stated.  *See id.*  Notably, while Hammer reported Justice's claims that neighbors had stolen from her and damaged her car, she did not state that Justice's thought content was abnormal, delusional, or paranoid.  *Id.* at PageID.1720.

Mental status examination findings by Justice's primary care provider, Muhammad Abdullah, M.D., also support the ALJ's decision.  In September 2017, Justice reported feeling depressed, worried, panicked, and fatigued, with poor memory and concentration.  ECF No. 12-1, PageID.621.  But Dr. Abdullah observed that her speech, behavior, judgment, cognition, and memory were normal.  *Id.* at PageID.622.  Her mood appeared anxious but not depressed, and her affect was not angry, blunt, labile, or otherwise inappropriate.  *Id.*  Dr. Abdullah also noted that her thought content was

14

delusional but not paranoid. *Id.* In November 2017 and February 2018, Dr. Abdullah noted that Justice's mood, affect, behavior, and thought content were normal. *Id.* at PageID.629, 647. Dr. Abdullah's mental status findings through October 2019 were normal, except for fluctuations in mood, some agitation, and intermittent paranoid thought. *Id.* at PageID.656, 658, 665; ECF No. 12-2, PageID.875, 1104, 1106, 1108, 1129, 1411, 1428.

Finally, Mira Krishnan, Ph.D., the state-agency reviewing consultant, provided a mental RFC assessment in April 2019. Dr. Krishnan found that Justice had depression, anxiety, and a trauma disorder, causing mild to moderate limitations. ECF No. 12-1, PageID.179-180. Dr. Krishnan stated that Dr. Quadri's opinion that Justice would miss 25 days per month of work contradicted objective evidence, as Justice received minimal to moderate medication and therapy and required no emergency treatment. *Id.* at PageID.187-188. Dr. Krishnan found that Justice could complete simple, routine, repetitive work; could not be required to set or meet productivity goals; could have no contact with the public; and could have occasional contact with supervisors and coworkers with no team or tandem work. *Id.* The ALJ gave Dr. Krishnan's opinion partial weight, adopting all restrictions except those for productivity goals. *Id.* at PageID.66.

15

As for activities of daily living, Justice and two family members described significant limitations with personal care, household chores, concentration, and memory. *Id.* at PageID.369-376, 380-394. But Justice reported she can cook simple meals, often with help from her son, and can sometimes do dishes and laundry. *Id.* at PageID.380-381. She also reported that she drives during the day to the grocery store, doctor appointments, and her son's school events. *Id.* at PageID.382. And although Justice claimed that she does not manage money well because of her memory issues, she stated during the hearing that she can do simple math. *Id.* at PageID.86, 382. While the reports are mixed, substantial evidence supports the ALJ's conclusion that Justice's "reported daily activities demonstrate sufficient attention, concentration, and task persistence to complete routine activities[.]" *Id.* at PageID.67. If the ALJ's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

These records support the ALJ's conclusion that, with the exception depressed and anxious mood and some paranoid thought, Justice's mental status examinations were normal. An ALJ may reject a treating source's

opinion that is unsupported by the provider's own treatment notes and is inconsistent with other substantial evidence. *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009). Thus, the ALJ was justified in discounting Dr. Quadri's and Hammer's opinions because they were not well-supported and inconsistent with the record.

Justice contends that the ALJ substituted his own medical judgment about the limiting effects of her mental conditions. ECF No. 14, PageID.1808. Not so. The ALJ relied on Dr. Krishnan's opinion, as described above. ECF No. 12-2, PageID.66. He adopted her determination that Justice could perform simple, routine, repetitive work, have no direct contact with the public, and have only occasional contact with supervisors and coworkers. *Id.* at PageID.66, 187-188. But he rejected her finding that Justice could not be required to set or meet productivity goals, reasoning that much of the evidence showed normal orientation, attention, concentration, and attentiveness. *Id.* Justice has not shown that this conclusion was erroneous, so the ALJ's decision should be affirmed.

## D.

Justice advances more arguments in her pro se reply. Much of the reply concerns Justice's subjective complaints, which the ALJ considered

17

and found inconsistent with the medical evidence.  ECF No. 12-1, PageID.61-62.  Justice cites no record or legal support that would justify disturbing that finding.

Justice also claims that she had strokes in 2020 and 2021.  ECF No. 19, PageID.1855-1856.  There is no reference to this in the medical records, which extend to February 2020—a month before the ALJ's March 2020 decision.  *See* ECF No. 12-1, PageID.71-75.  Since the Court may consider only the evidence in the record below, Justice's argument based on new medical records lacks merit.  *See Bass*, 499 F.3d at 513.

Next, Justice asserts that the ALJ overlooked her Ehlers-Danlos syndrome (EDS) and lupus diagnoses.  ECF No. 19, PageID.1857.  In her application, Justice did not allege disability based on these conditions, nor did she raise the conditions at the hearing.  *See* ECF No. 12-1, PageID.164.  The record shows that Justice was "under investigation" for EDS in 2020 and had both positive and negative lupus tests.  *See* ECF No. 12-1, PageID.728; ECF No. 12-2, PageID.1422, 1434, 1771.  But Justice cites no evidence in the record explaining the impact these conditions have on her functioning—and the Court has no duty to search for evidence to support her claims.  "Judges are not like pigs, hunting for truffles that might be buried in the record."  *Knight Capital Partners Corp. v. Henkel AG & Co.,*

18

*KGaA*, 930 F.3d 775, 780 n.1 (6th Cir. 2019) (citation and internal quotation marks omitted). And when a claimant fails to allege disability based on a given condition, an ALJ need not investigate that condition. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003).

Finally, Justice argues that the ALJ's decision was influenced by telephone calls from unidentified people stating that her disability application was fraudulent. ECF No. 19, PageID.1857. This speculation is not supported by the ALJ's decision or the record. Thus, the Court rejects Justice's arguments in her reply.

## IV.    Conclusion

The Court **RECOMMENDS** that Justice's motion for summary judgment (ECF No. 14) be **DENIED**, the Commissioner's motion for summary judgment (ECF No. 15) be **GRANTED**, and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: July 11, 2022

## **NOTICE TO THE PARTIES ABOUT OBJECTIONS**

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*.*  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 11, 2022.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager

21